# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:09 CR 110 |
| | ) | |
| HECTOR ESCOBAR-IZAGUIRRE | ) | |

## OPINION and ORDER

On October 8, 2009, defendant Hector Escobar-Izaguirre pleaded guilty to transporting illegal aliens in violation of 18 U.S.C. § 1324. (DE # 17.) On December 30, 2009, this court sentenced him to twelve months of imprisonment and two years of supervised release for that crime. (DE # 27.) Defendant's term of supervised release began on September 30, 2010. (DE # 34.) He was deported to Honduras on October 4, 2010, by the Bureau of Immigration and Customs Enforcement. (*Id.*) Defendant did not contact a probation office to report reentry into the United States. Nevertheless, on November 26, 2010, he was arrested in Tecate, California, and charged with the offense of being a deported alien found in the United States in violation of 8 U.S.C. § 1326. (*Id.*)

Accordingly, the probation office petitioned the court to issue a warrant for defendant because he violated the terms of his supervised release by committing a federal offense, re-entering the United States without notifying the nearest probation office within seventy-two hours, and failing to comply with the rules and regulations of the Bureau of Immigration and Customs Enforcement. (*Id.*) The magistrate judge issued a warrant for defendant's arrest on December 2, 2010. (*Id.*) After the warrant was issued,

the United States Marshal's Office placed a detainer on defendant, and it will take him into custody for the revocation hearing upon his release from imprisonment. (Letter from Probation, July 8, 2011.) Defendant pleaded guilty to the offense of being a deported alien found in the United States in violation of 8 U.S.C. § 1326 on April 18, 2011. (*Id.*) He was sentenced to 37 months imprisonment and three years of supervised release. (*Id.*) He is currently incarcerated in New Mexico for this sentence. (*Id.*) His projected release date is August 5, 2013. (DE # 36 at 3.)

Defendant has filed a motion requesting that the court hold a supervised release revocation hearing in his absence and informing the court that he waives his rights to be present at the hearing and to be represented at the hearing by an attorney. (DE # 36.) He asks the court to promptly hold a hearing on his supervised release violation, revoke his supervised release, and impose a sentence of imprisonment for his supervised release violation that would run concurrently with the sentence he is currently serving in New Mexico for the crime of illegal reentry. (*Id.*)

Defendant argues that he has a due process right to have a preliminary hearing on his supervised release violation held "as promptly as convenient after arrest." (DE # 36 at 2 (citing *Morrissey v. Brewer*, 408 U.S. 471, 485 (1972)).) He argues that FEDERAL RULE OF CRIMINAL PROCEDURE 32.1 entitles him to an initial appearance, preliminary hearing, and a revocation hearing, each of which has a timeliness requirement under the rule. (*Id.*) He argues that delaying the execution of the warrant for his arrest and the revocation hearing will cause him prejudice because it will result

2

in "anxiety about the future, mental anguish[,] and torture." (DE # 36 at 3.) He indicates that he may have depression. (*Id.*) He also states that he has suffered and will continue to suffer from anxiety in waiting for his revocation proceedings. (*Id.*)

The court asked both the probation office and the prosecution to respond to defendant's motion. The prosecution responded that the court should not accept defendant's written waiver to a revocation hearing because the court would not be able to find that the waiver was knowing and voluntary as required for a valid waiver. (DE # 37 at 2.) In his reply, defendant wrote that he is willing to waive his due process rights to a full revocation hearing

> with the special conditions as part of the Plea Agreement which he is willing to enter with the U.S. Government and also with the District Court for any and all sentences that the District Court for the District of Indiana imposes for the defendant being in violation of his conditions [of his supervised release] to run concurrent[ly] with the current federal imposed sentence [in his conviction in the Southern District of California].

(DE # 38 at 1.) Similarly, he concludes with a request that the District Court find all necessary grounds to revoke his supervised release and hold a hearing in his absence as long as the new sentence of imprisonment runs concurrently with his current term of incarceration. (*Id.* at 2.)

Defendant's reply shows that the prosecution was right to be concerned that his waiver was not made knowingly. Defendant cannot waive his right to a hearing while attempting to control the outcome of that hearing. The court does not accept the "special conditions" that defendant attaches to his waiver. Therefore, the court rejects

3

defendant's waiver of his right to be present at a supervised release revocation hearing and to an attorney for that hearing.

The next question is whether the revocation hearing needs to be held right away or whether the detainer on the warrant can remain against defendant until he is released from his current confinement. The probation office's response to the defendant's motion is relevant to this inquiry. The probation office stated that under U.S.S.G. § 7B1.4(a), the advisory guidelines' recommended custody term for defendant's supervised release violation is 4-10 months of imprisonment because he is charged with a Grade B violation and he had a criminal history of I at his original sentencing. (Letter from Probation, July 8, 2011.) Under U.S.S.G. § 7B1.3(c)(1), the minimum term of custody may be satisfied by a custody term of as little as one day followed by supervised release with a special condition of community confinement or home detention for the remainder of the term. (*Id*.) The probation officer points out that U.S.S.G. § 7B1.3(f) advises that any term of imprisonment imposed upon the revocation of supervised release be ordered to be served consecutively to any sentence of imprisonment that the defendant is serving, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation of supervised release. (*Id*.)

To begin, FEDERAL RULE OF CRIMINAL PROCEDURE 32.1 does not apply to defendant. It only applies to a "person held in custody for violating probation or supervised release." FED. R. CRIM. P. 32.1(a)(1)-(b)(1)(A); *United States v. Saykally*,

777 F.2d 1286, 1286-88 (7th Cir. 1985) (no preliminary revocation hearing was needed when there was no indication that defendant was held "on the ground that he has violated a condition of his probation"). Defendant is not being confined for violating the conditions of his supervised release; he is being confined for his conviction for the crime of reentering the United States illegally - the crime that constituted a violation of the conditions of his supervised release. The question then is whether defendant has a due process right to have the warrant for his arrest for the supervised release violation immediately executed which would then require his initial appearance, preliminary hearing, and revocation hearing. *Id.* at 1288; *United States v. Rasmussen*, 881 F.2d 395, 398-400 (7th Cir. 1989).

The Supreme Court's decision in *Moody v. Daggett*, 429 U.S. 78 (1976) is instructive in this matter.[1] There, while the defendant was on parole after serving a term of confinement for a conviction of the federal crime of rape on an Indian reservation he committed another federal crime by shooting two people on an Indian reservation. *Id.* at 80. Soon after the defendant was incarcerated for the second crime, the parole board issued, but did not execute, a warrant for the defendant for violating his parole by committing the second crime. *Id.* The defendant asked the board to execute the

---

[1] While *Moody* involved violations of parole, the constitutional protections for revocation of supervised release are considered to be the same as those afforded for revocation of parole or probation. *United States v. Sanchez,* 225 F.3d 172, 175 (2d Cir. 2000).

warrant immediately so that any term of imprisonment imposed for his parole violation could run concurrently with his incarceration for the shootings. *Id.* at 81. The board refused to execute the warrant until the defendant was released from the confinement imposed for his second crime. The Supreme Court held that there was no requirement for an immediate hearing before the defendant was taken into custody as a parole violator. *Id.* at 86. The Court reasoned that the defendant had no liberty loss from the outstanding warrant and that the uncertainty of the possibility of future incarceration was not a liberty interest protected by due process. *Id.* at 86-87. It also found that the defendant could still be sentenced to the equivalent of a concurrent sentence even if the hearing was held after his release. *Id.* at 87-88. Therefore, the court concluded that the defendant did not have the right to force the immediate decision of the parole board and that a ten year delay in execution of the warrant would not violate his due process rights. *Id.*

The United States Court of Appeals for the Seventh Circuit has noted that pursuant to *Moody*, the government can issue a detainer against a probation violator and can wait to hold the revocation hearing until the term of confinement for another sentence is served. *United States v. Scott,* 850 F.2d 316, 320 (7th Cir. 1988). The Seventh Circuit has recently noted that under *Moody* "a parole-revocation hearing may be deferred until after an intervening term of imprisonment has expired." *Evans v. Thurmer,* 278 F. App'x 679, 681 (7th Cir. 2008) (unpublished); *see also Sharp v. United States,* No. 1:09-cv-883, 2009 U.S. Dist. LEXIS 114056, at *3-4 (S.D. Ind. Dec. 1, 2009)

(unpublished) (stating that under *Moody* a defendant is only entitled to a hearing on a violation of supervised release once he is in custody pursuant to the warrant issued for that violation of the terms of supervised release).

In *Scott*, rather than issuing a detainer for the defendant's arrest that would issue after a different sentence had been served, the government asked the court to hold the defendant until his revocation hearing and the court granted this request. 850 F.2d at 320. Therefore, *Moody* did not fully apply in that case because Scott was being confined in part because of his probation violation. Still, he was held in federal detention primarily because of his prior conviction for violating a different federal law. *Id.* The Seventh Circuit determined that the balancing test for determining whether a defendant has a constitutional right to a prompt revocation hearing involves the four *Barker* speedy trial factors and an additional factor: "the reason why the probationer is in custody." *Id.* The four *Barker* factors are the length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). In *Scott*, the court found that pursuant to *Moody*, when the loss of liberty was not due to the probation revocation, no constitutional right was violated by a thirteen month delay of the probation revocation hearing. 850 F.2d at 320.

In *Rasmussen*, the Seventh Circuit used the *Barker* balancing test as augmented by *Scott* to determine whether a thirteen month delay in holding a probation revocation hearing violated the defendant's due process rights. 881 F.2d at 398-400. There, the defendant violated his federal probation by committing federal crimes in another

7

jurisdiction. *Id*. at 398. Once the defendant was convicted of the intervening federal crimes, a detainer was lodged against him for the probation revocation matter and seven months later the defendant requested that matter be resolved. *Id.* at 399. The court was most concerned with this seven month period of delay and used careful scrutiny in applying the *Barker/Scott* test. *Id.* The Seventh Circuit found that the defendant was not prejudiced by the delay because his detention was primarily attributable to the sentence of confinement imposed for the intervening crime and not to the probation violation. *Id.* The court also noted that if the district court found that the defendant had suffered any prejudice from the delay it could have cured it by ordering that the sentence imposed for the probation violation run concurrently with the sentence imposed for the intervening crime. *Id.* at 400.

The court will consider the *Barker/Scott* test and *Moody* to determine whether defendant's due process rights mandate that a supervised release revocation hearing be held before his release from his current confinement. The reason for the delay is defendant's incarceration in New Mexico. Defendant has asserted his desire to have the supervised release hearing held (the court refrains from using the word right since he does not appear to have a right to prompt execution of the warrant), and his release from confinement will be in two years. Therefore if the court denies defendant's request for an immediate hearing, it may be held two years after he has requested it. Defendant's current confinement is attributable only to his sentence from the United States District Court in the Southern District of California.

The court will carefully consider whether defendant suffers any prejudice from delay in the execution of the supervised release violation warrant. An important consideration in *Moody* was that the defendant had not presented any evidence needed for his parole hearing that would be compromised by a delay. *Id.* at 88 n.9. The Supreme Court has explained that a prisoner cannot relitigate the factual issue of guilt of a probation violation charge that was already established by a conviction of the crime that constituted that charge. *Carchman v. Nash*, 473 U.S. 716, 732-33 (1985) (citing *Morrissey*, 408 U.S. at 490). Therefore the most serious interest of a defendant in obtaining a speedy disposition of a charge against him - the interest in preventing a delay from impairing his ability to defend himself - "is unlikely to be strongly implicated in the probation-violation detainer context." *Nash*, 473 U.S. at 732-33.[2] Accordingly, other circuit courts have held that the delay in executing a warrant and then holding a revocation hearing only triggers due process concerns when "the delay has prejudiced the defendant's ability to contest the validity of the revocation." *United States v. Throneburg*, 87 F.3d 851,

---

[2] In *Nash*, the Supreme Court determined that the Interstate Agreement on Detainers, through which a prisoner incarcerated in one state can demand the speedy disposition of any untried indictment, information, or complaint that forms the basis of a detainer lodged against him by another state, did not apply to probation violation detainers. 473 U.S. at 719, 734. The Court reasoned that the disposition of a probation-violation charge underlying a probation-violation detainer against a defender is likely to result in a resentencing to imprisonment because the defendant has already been convicted of the crime that constituted the probation violation. *Id.* at 732. Therefore, "[t]he ultimate consequence [of a probation revocation hearing] is that the detainer based on the probation-violation charge merely will be replaced by a detainer based on the reimposed sentence, with similar adverse effects on the prisoner's treatment and rehabilitation." *Id.*

853 (6th Cir. 1996). Here, defendant has already pleaded guilty to the crime constituting his supervised release violation and he has not argued that his ability to defend himself will be compromised by a delay. Therefore, there does not appear to be a risk of prejudice to him by a delay.

Further, here, as in *Moody*, defendant is not prejudiced by delaying his probation hearing until after his term of imprisonment because the court will still have the power either to not revoke supervised release, or, if it does revoke it, to grant the equivalent of a concurrent sentence retroactively.[3] *United States v. Long*, 823 F.2d 1209, 1212 (7th Cir. 1987) (noting that "[d]istrict judges, within statutory constraints, have wide discretion in fashioning sentences") (citing *Moody*, 429 U.S. at 97). Relatedly, even if defendants' revocation hearing were held during his term of current confinement, the advisory Sentencing Guidelines recommend that his term of imprisonment for violating his probation run consecutively to his current term of confinement. Thus, defendant suffers no prejudice from the holding of the hearing after his term of current confinement is completed because the policy of imposing consecutive sentences exists in either case. *See e.g., United States v. Chaklader*, 987 F.2d 75, 77 (1st Cir. 1993) (holding that the defendant suffered no prejudice from a twenty-one month delay of a probation revocation hearing when it was not alleged that the delay impaired his ability to contest

---

[3] Even if the delay would affect defendant's ability to serve concurrent sentences, courts have noted that there is no authority that "a delay that may affect one's ability to serve sentences concurrently either implicates due process or violates the provisions of 18 U.S.C.A. § 3581(i)." *Throneburg*, 87 F.3d at 853.

10

the revocation when he pleaded guilty to the charge constituting the probation violation and the twenty-one month delay did not restrict the district court's ability to grant the equivalent of a concurrent sentence).

In fact, the court may be in a better position to determine what defendant's sentence should be for his supervised release violation once he has completed his current term of confinement. The Supreme Court has noted that the goals of a probation revocation hearing are best served by holding the revocation hearing at the expiration of a probation violator's intervening sentence. *Moody*, 429 U.S. at 89. The Court explained that when a violator has admitted to the crime that constituted the violation, the only inquiry is whether continued release is warranted notwithstanding the violation. *Id.* This decision rests on the ability to predict whether the individual will violate the law again. *Id.* The Court concluded that this prediction is most relevant and accurate at the expiration of the intervening sentence. *Id.*; *Nash,* 473 U.S. at 733 (stating that "it often may be desirable to delay rather than to expedite disposition of the probation-violation charge").

Defendant also argues that he will be prejudiced because a delay causes "an inmate grievous harm: anxiety about the future, mental anguish[,] and tormenting." (DE # 36 at 3.) He argues that these "signs may be depression symptoms" and that depression is a serious illness that affects everyday life. (*Id.*) In holding that a probation violator is not entitled to an immediate hearing simply because the delay would cause him "anguish" the Seventh Circuit noted that "some degree of anguish is an inevitable

result of criminal prosecution and does not alone offend the Constitution." *United States v. Williams*, 787 F.2d 1182, 1184 (7th Cir. 1986).

In *Scott*, the Seventh Circuit held that a thirteen month delay in holding a revocation hearing did not prejudice defendant by causing him anxiety. 850 F.2d at 321 (finding that the defendant's "claim that he suffered anxiety from the uncertainty caused by the delay does not constitute serious prejudice"). It explained that "[a]ny anxiety [the defendant] may have felt probably was caused by [knowledge that the government sought revocation] and the strength of the government's case, rather than any delay." *Id.* The court found that to show that a delay prejudices him in a constitutionally significant sense, a defendant "must offer evidence of anxiety beyond that which reasonably corresponds with a criminal prosecution, conviction, and imprisonment." *Id.* Here, defendant does not indicate that he has this type of evidence. In fact, defendant seems to be arguing that delay in executing the warrant would cause any inmate anxiety and anguish. There is no indication at this time that defendant is experiencing any anxiety above that which is normally caused by someone's knowledge that the government seeks to revoke his supervised release.

In his reply, defendant argues that the detainer against him for his probation violation warrant is preventing him from being able to participate in institutional rehabilitative programs and causing him economic loss because he cannot be considered for "most of the good paying job[s]" offered at his current place of confinement. (DE # 38 at 2.) Defendant is not prejudiced in a constitutionally significant

way by his inability to participate in "good paying" work assignments and in rehabilitative programs. In *Moody*, the Supreme Court determined that prisoners do not have a due-process-protected liberty interest in "prisoner classification and eligibility for rehabilitative programs in the federal system." 429 U.S. at 88. Similarly, the law in the Seventh Circuit is clear that prisoners do not have a liberty interest in prison work assignments, and therefore defendant is not entitled to due process protections for obtaining a "good-paying" job. *Dewalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000); *Wallace v. Robinson*, 940 F.2d 243, 247 (7th Cir. 1991) ("Any prisoner's interest in the job-of-preference is 'meager, transitory, [and] uncertain.'"). Accordingly, while a two year delay in holding the revocation hearing is not an insignificant amount of time, defendant has not shown that the delay will cause him any prejudice. Defendant has not been deprived of any liberty interest by the detainer against him for the supervised release violation warrant. Therefore, due process does not entitle him to an immediate supervised release hearing.

Finally, the court must make sure that it will still have power to revoke defendant's term of supervised release once he is released from detention pursuant to his current conviction. 18 U.S.C. § 3583(i) provides that the power of a court to revoke a term of "supervised release for violation of a condition of supervised release, and to order the defendant to serve a term of imprisonment . . . extends beyond the expiration of the term of supervised release for any period reasonably necessary for the adjudication of matters arising before its expiration if, before its expiration, a warrant or

summons has been issued on the basis of an allegation of such a violation." Defendant's projected release date for his current conviction is August 5, 2013. His term of supervised release was set to expire on September 29, 2012. However, defendant's period of supervised release is tolled by his imprisonment for a federal crime. 18 USC § 3624(e) (stating that "a term of supervised release does not run during any period in which the person is imprisoned in connection with a conviction for a Federal, State, or local crime unless the imprisonment is for a period of less than 30 consecutive days"). Therefore his supervised release term will not expire until well after his release.[4]

For the foregoing reasons, defendant's motion (DE # 36) is **DENIED.** The court **REJECTS** defendant's waiver of his right to be present at a supervised release revocation hearing and to an attorney for that hearing.

**SO ORDERED.**

Date: August 1, 2011

s/ James T. Moody  
JUDGE JAMES T. MOODY  
UNITED STATES DISTRICT COURT

---

[4] Even if defendant's term of supervised release was to expire before his release for his current conviction, this court would still have power to sentence him for violating his probation under 18 U.S.C. § 3583(i). Federal courts have held that it is reasonably necessary for a federal court to delay a supervised release hearing until after a defendant is released from state custody. *United States v. Garrett*, 253 F.3d 443, 450 (9th Cir. 2001). In reaching its holding in *Garrett*, the circuit court reasoned that it would be "extremely burdensome" for the federal government to writ a defendant out of state court for a revocation hearing in federal court even when the federal court house was near the state detention facility. *Id.* Here, although defendant is in federal custody, holding his hearing during this term of confinement would be burdensome. He is held in New Mexico and his preliminary hearing and revocation hearing will need to be held in the Northern District of Indiana. FED. R. CRIM. P. 32.1(a)(5)(A)(i).